Ruffin, C. J.
 

 Robert Lyon, of Bladen, died intestate in October, 1841, leaving the plaintiff, his widow, and the defendant, his only child, the issue of a former marriage.— With the consent of the widow, the defendant took administration of the estate at the next term of the County Court, which was held in November, 1841. The intestate left some slaves, and also other personal effects and debts, to the value, probably, of about five or six hundred dollars. In December, 1841, the perishable articles were offered for sale by the defendant, at about half the value, or less. — the
 
 *202
 
 sales amounting to $258 15, and the purchases for the defendant being more than twice as much as those for the plaintiff. At February Term, 1822, the widow filed her petitions for a year’s allowance, and for her dower, and in each an order was made according to the prayer, with the privity of the defendant, and between that and the next term, the dower was laid off, and the parties divided the slaves between them, and also the sum of $225 08 was assessed for the year’s allowance, and the report returned to May Term, 1842. At November Term following, the defendant moved the Coui’t to set aside the report and also discharge the order appointing commissioners to lay it off, upon the ground, that the application should have been made at November Term, 1841, when administration was granted, and the Court had no power to order an allowance afterwards; and the Court, accordingly, allowed the defendant’s motion.
 

 The bill was filed in April, 1843, by the widow, to have the benefit of the year’s provision assessed for her, and also for an account of the personal estate and payment of her share. It states, that upon the death of the intestate, the plaintiff and defendant came to an agreement, that she should relinquish her right of administration in favor of the defendant, and that in consideration thereof, she need not apply at the first term for her year’s provision, but might do so at the succeeding February Term, 1842, as she af-terwards did. It 'further states, that the allotment of dower and division of the slaves were not satisfactory to her, and that she so informed the defendant at the May Term, 1842, and that the defendant then agreed with her, that, if she would abide by the same, he would, on his part, acquiesce in the year’s provision assessed for her; and that,-accordingly, the plaintiff then accepted her dower and share of the slaves, and the defendant allowed the report for the
 
 *203
 
 year’s allowance to be confirmed, and subsequently paid to the plaintiff a portion thereof.
 

 The bill further states, that the intestate owed no debts, and that, when, the sale of the perishable property was about coming on, the defendant proposed to the plaintiff, to let it proceed for form’s sake, and that, as one or the other would need nearly all the articles, the things should be all bid in on their joint account, and afterwards divided between them, according to their relative shares of the estate; and that the plaintiff, then having full confidence in the defendant, accepted the proposal, and, accordingly, the property was sold, and the plaintiff purchased to the amount of about $30, and the defendant, through one Barksdale, purchased the residue for much less than the value, and much less than would have been bid by the persons present, if the defendant had not informed the company of the understanding between him and the plaintiff and thereby prevented competition.
 

 The bill states, that the defendant afterwards refused to make any division of the perishable property, but has taken all the purchases made for him, and claims to retain them to his own use at the prices bid by his agent. And the prayer is, that the defendant may be compelled to perform specifically his several agreements, by paying to the plaintiff the sum assessed for her year’s allowance, and also by dividing all the perishable property between them, or by accounting for the same in the settlement of the estate, at its true value.
 

 The answer denies any agreement whatever in respect of the time of applying for the year’s allowance. It states that the defendant knew the plaintiff was entitled to such an allowance, and did not know that her application ought to be made at the term of granting administration; and that under those impressions, after he administered, he made
 
 *204
 
 advances of provisions and other necessaries to the value of $111,42, which the plaintiff promised to allow as a credit in part of the sum of $225,08, assessed as the allowance; and that on that understanding he did not object to the amount of the allowance, but afterwards made a further payment thereon of $S9 in cash. The answer further states, that the defendant subsequently proposed to the plaintiff to come to a settlement for the allowance and to pay her the balance, and that then the plaintiff' refused to allow a credit for any part of the sum of $111,42 for advances prior to the allowance, but demands the whole assessment, deducting only the $S0 paid after the judgment; and, thereupon, he applied to Counsel for advice, how he might have the benefit of the advances made by him in anticipation of the allotment of the year’s provision, and was informed that the order for it was illegal and void, because the application of the plaintiff was not made in due time, and on that gound the allowance was at his instance set aside. The answer denies that the defendant ever consented to waive any legal right in respect to the year’s allowance, or had any understanding with the plaintiff'that he would acquiesce in any irregular proceeding, or in any wise induced the plaintiff' to delay her application to the County Court therefor.
 

 The answer further denies, that there was any agreement between the parties, that all or any of the articles should be bid in, on the joint account of the plaintiff and-defendant, or that the same should be divided between them . in any proportions whatever. On the contrary, it states, that the estate was but little indebted, and, as the parties were the only persons interested, and considered that all the articles would be useful to the one or the other, they came to an agreement, that each of them should select such articles as he or she desired to have, and appoint an agent
 
 *205
 
 to purchase what they respectively wanted; and that, accordingly, the plaintiff employed James Bryan to bid for her, arid the defendant with her knowledge, employed George F. Barksdale to bid for him : and that Mr. Bryan bought for the plaintiff such things as she directed, at very low prices, without any interference on the part of the defendant, and Mr. Barksdale in like manner purchased for the defendant, at higher prices than those given by the plaintiff The answer denies that the defendant did any thing to prevent others from bidding, or that there was any understanding, that he would.account with the plaintiff for his purchases at any other prices than those bid, or that there was any dissatisfaction with the sale on the part of the plaintiff.
 

 The answer then states several demands of the defendant against the intestate, for which he claims to retain out of the assets upon the taking of the accounts, which need not be stated in this stage of the proceeding. On the hearing, the parties prayed a declaration of their rights upon several points; the plaintiff, that she was in this Court entitled to the sum which was assessed for her year’s allowance, and also that the defendant was chargeable in his account with the estate with the fair value of his purchases at the sale; while the defendant insisted, that he was only chargeable for the prices bid at the sale, and also that in taking the account between the plaintiff and himself in respect of her distributive share, he should have credit for the sums advanced or paid to the plaintiff on account of her right to a year’s allowance.
 

 The evidence relates only to the value and sales of the perishable property, and sustains the answer as to that paid of the case. The prices were about half the value, and each party, with the knowledge of the other, had an agent who purchased for them respectively, and the plaintiff was
 
 *206
 
 entirety willing the defendant should purchase in that way •and for ihose prices such things as she did -not want for herselfj and in one instance complained of a bidder’s running up some articles for which the defendant’s agent was ^bidding.
 

 The plaintiff has failed to establish an agreement, that the defendant’s purchases and hers were on joint account, and therefore, the usual account of the defendant’s administration is to be ordered, as of course, and the plaintiff’s •share of the surplus ascertained. In the account the Court cannot direct the defendant to be charged for his purchases -more than the prices bid at the sale. It is generally true, that an administrator'cannot buy at his own sale, and property bid off by him remains unchanged. Yet, that does not apply, when he fairly bids with the privity and consent ■of the next of kin, having a full knowledge of the condition of the estate and the value of the property. In this particular case the transaction was substantially a mode of dividing between the next of kin a small part of the property, •consisting of household stuff, plantation tools, and an indifferent stock, without any unfairness or inequality not known and intended. There is no reason for disturbing •such an arrangement, which would not likewise invalidate ■every voluntary partition of specific property between next •of kin, if one of them happen to be administrator.
 

 With respect to the year’s allowance, the Court holds •also, that the plaintiff has not entitled herself to any relief. It is to be taken here, that the report of the freeholders and the order for the allowance were, in point of law, property set aside in the Court of law. Then, there can be no relief upon the basis of the original right to an allowance. For, that was a legal right, on which the legal remedy ought to have been prosecuted ; and, moreover, we know that it is gone at law, because the statute requires the
 
 *207
 
 widow to petition at the term in which the administration is granted, and she cannot do so afterwards ;
 
 Gillespie
 
 v
 
 Hyman,
 
 4 Dev. 119. The bill, therefore, places the equity on an agreement of the defendant, that the plaintiff need not petition at the first term, but might do so at the succeeding term. But there is no proof of such an agreement or even of a treaty on the subject. Consequently, that ground fails. But enough appears in the answer to establish the mistake of both the parties as to the plaintiff’s remedy for her year’s allowance, and to show that they thought she might get it by petitioning after the first term. But a mistake of that kind will not authorise this Court to set up again a legal right, which is gone at law by not being prosecuted in due time. The neglect to prosecute, though arising from mistake, amounts to laches, and the party must abide the consequences, unless the other party either agreed not to take advantage of the delay, or contributed to bring- about the mistake; and here the defendant denies that he did either.
 

 But, while there can be no decree as for an allowance, to the plaintiff, it seems to follow, that the defendant cannot in this Court charge the application of the payments made by him on account of the year’s allowance. If he can get them back at law, equity may say nothing against it. But it would be a clear answer to a bill by him, founded on his mistake in making the advances and payments, that the widow’s legal remedy was also lost merely by a mistake of law; and therefore conscience no more forbids her to keep ■what the defendant voluntarily, though under a mistake, paid her, than it would compel the defendant to reject the money, if the plaintiff were voluntarily to offer it back upon the ground, that he paid it to- her under a mistake. There is no equity between them, for, if he insists that she waived her right by not acting on it in proper time, she
 
 *208
 
 may in like manner urge, that, to the extent of his advances and payments, he waived the objections given him by the law, and the more especially when he deferred his objections until she could in no manner proceed anew at law. The defendant, therefore, is not entitled to apply any of those sums in diminution of the plaintiff’s distributive share.
 

 Per Curtam. Decree accordingly.